1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roy Bernard Engebretson,<br><br>        Petitioner,<br><br>vs.<br><br>Attorney General of the State of Arizona, et al.,<br><br>        Respondents. | CV 11-583-TUC-JGZ (JR)<br><br>**REPORT AND RECOMMENDATION** |

      Pending before the Court is Roy Bernard Engebretson's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254.  In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation.  As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

1

1

2 **I.     FACTUAL AND PROCEDURAL BACKGROUND**

3       The Arizona Court of Appeals summarized the factual background of

4 Engebretson's convictions as follows:[1]

> The evidence established that an undercover officer was introduced to
> James Moore, a known drug dealer, by another officer.  The officer told
> Moore she wanted to buy methamphetamine, which Moore arranged,
> introducing the officer to Engebretson.  Engebretson weighed the
> drugs, placed half an ounce into a bag, and gave it to the undercover
> officer.  The officer gave Moore a portion of the drugs—"a useable
> pinch"—as payment for arranging the transaction.  Engebretson was
> apparently arrested about two months later on other charges and
> subsequently charged with the instant offenses.  The officer identified
> Engebretson at trial as the person who had sold her the
> methamphetamine.

11 Ex. A, p. 2.[2]  Engebretson was charged with possession of a dangerous drug for sale

12 and possession of drug paraphernalia and, after a jury trial at which Engebretson

13 attended only portions, the jury convicted Engebretson on both charges.  Ex. A, pp.

14 1-2.  After his conviction, the trial court issued a warrant for Engebretson's arrest.

15 After his subsequent arrest, the trial court sentenced him to concurrent mitigated

16 prison terms of 14 years for possession of a dangerous drug for sale, and three years

17

18 _____

19 [1] The factual summary of the Arizona Court of Appeals is accorded a presumption of
20 correctness. 28 U.S.C. § 2254(e)(1); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir.
2009) (citing *Hernandez v. Small*, 282 F.3d 1132, 1135 n. 1 (9th Cir. 2002).

21

22 [2] Unless otherwise indicated, all exhibit references are to the exhibits attached to the
Respondents Answer to Petition for Writ of Habeas Corpus (Doc. 14).

2

1    for possession of drug paraphernalia.  Ex. A, p. 2.  Both sentences were enhanced by

2    his prior felony convictions.  *Id.*

3         After Engebretson's appointed appellate counsel could find no issues for

4    appeal and filed a brief in compliance with *Anders v. California*, 386 U.S. 738

5    (1967), Engebretson filed a *pro se* supplemental brief raising the following claims:

6         1.    The undercover officer's actions in investigating the case were
           unethical and illegal and tainted the investigation and, as such, the
7          evidence she obtained should not have been admitted at trial.

8         2.    The Fourth Amendment's prohibition against unreasonable
           searches and seizures was violated by the introduction of Engebretson's
9          photograph for identification purposes at trial.

10        3.    The methamphetamine admitted at trial may have been tampered
           with, contaminated or exchanged while it was being held as evidence.
11

12        4.    The trial court erred in denying Engebretson's motion for a
           judgment of acquittal because the State failed to meet its burden of
           proof  by failing to present enough evidence to support a guilty verdict.
13

14   Ex. B, p. i.  On August 12, 2008, the Court of Appeals denied Engebretson's appeal

15   on the merits without requiring a response from the State.  Ex. A.  Engebretson did

16   not seek review of the decision by the Arizona Supreme Court.  Ex. C.

17        On September 4, 2008, Engebretson initiated state post-conviction relief

18   ("PCR") proceedings by filing a notice.  Ex. D.  In his subsequently filed PCR

19   petition, Engebretson argued that his trial counsel was ineffective for failing to: (1)

20   investigate alleged ethical and legal improprieties on the part of the investigating

21   officer; (2) communicate the State's plea offer to him; (3) provide notice of the

22   commencement date of trial; and (4) object to the admission of the methamphetamine

1    at trial.  Exs. E, G.  The trial court denied each of Engebretson's claims, finding

2    claims (1) and (4) precluded because they had been previously raised and denied on

3    direct appeal, and denying claims (2) and (3) on the merits.  Ex. L.

4        Engebretson filed a petition for review in the Arizona Court of Appeals,

5    arguing that trial counsel was ineffective in explaining the statutes governing his

6    case, and for failing to fully inform him about the plea agreement and the

7    implications of rejecting it.  Ex. I.  On September 16, 2010, the court granted review,

8    but denied relief.  Ex. J.  The Court of Appeals found that Engebretson had not raised

9    his claim of ineffective assistance of counsel during plea negotiations in his original

10   PCR petition filed in the trial court and had only raised it before the trial court in his

11   reply.  Ex. J, pp. 2-3. The court nevertheless found the claim meritless.  *Id*., p. 2.

12   The court then found that Engebretson's claims of ineffectiveness related to police

13   misconduct and admission of drug evidence were improperly found to be precluded,

14   but nevertheless denied the claims on the merits.  *Id*., pp. 3-4.

15       Engebretson sought review of the Court of Appeals' order by the Arizona

16   Supreme Court.  Ex. K.  By letter dated March 31, 2011, the petition was denied.  Ex.

17   L.

18       In the petition now before the Court, Engebretson raises three claims.  In

19   Ground One, he claims his counsel was ineffective for failing to promptly

20   communicate and explain the plea agreement.  In Ground Two, he alleges that his

21   counsel was ineffective for failing to investigate and file appropriate pre-trial motions

22   and by allowing Engebretson to be tried *in absentia*.  In Ground Three, he alleges

4

1   that his trial counsel was ineffective for failing to object to the admission of

2   methamphetamine evidence at trial. *Petition*, pp. 6-8H.

3   **II.    <u>TIMELINESS</u>**

4           The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

5   provides for a one year statute of limitations to file a petition for writ of habeas

6   corpus.   28 U.S.C. § 2244(d)(1).   Petitions filed beyond the one-year limitations

7   period must be dismissed. *Id.* The statute provides in pertinent part that:

8           (1) A 1–year period of limitation shall apply to an application for a writ
        of habeas corpus by a person in custody pursuant to the judgment of a
9           State court. The limitation period shall run from the latest of-

10          (A) the date on which the judgment became final by the conclusion of
        direct review or the expiration of the time for seeking such review;

11

12          (B) the date on which the impediment to filing an application created
        by State action in violation of the Constitution or laws of the United
        States is removed, if the applicant was prevented from filing by such
13          State action;

14          (C) the date on which the constitutional right asserted was initially
        recognized by the Supreme Court, if the right has been newly
15          recognized by the Supreme Court and made retroactively applicable to
        cases on collateral review; or

16          (D) the date on which the factual predicate of the claim or claims
17          presented could have been discovered through the exercise of due
        diligence.

18          (2) The time during which a properly filed application for State post-
19          conviction or other collateral review with respect to the pertinent
        judgment or claim is pending shall not be counted toward any period of
20          limitation under this subsection.

21   28 U.S.C. § 2244(d).

22

1    The Arizona Court of Appeals denied Engebretson's direct appeal on August

2    12, 2008.  Ex. A.  Engebretson did not seek review by the Arizona Supreme Court

3    and his conviction therefore became final 30 days later, on September 11, 2008.  *See*

4    *Gonzalez v. Thaler*, 132 S.Ct. 641, 656 (2012) ("with respect to a state prisoner who

5    does not seek review in a State's highest court, the judgment becomes 'final' under §

6    2244(d)(1)(A) when the time for seeking such review expires").  Therefore, absent

7    any tolling, the one-year limitations period would have commenced the following

8    day, September 12, 2008.

9    However, the limitations period was statutorily tolled when Engebretson

10   timely initiated PCR proceedings on September 4, 2008 with the filing of his PCR

11   notice.  Ex. A; *See* 28 U.S.C. § 2244(d)(2); Ariz.R.Crim.P. 32.2(a).  Engebretson's

12   properly filed PCR petition remained pending until March 31, 2011, when the

13   Arizona Supreme Court denied relief.  *See Lawrence v. Florida*¸ 549 U.S. 327, 332

14   (2007).  Because Engebretson filed the instant petition on September 15, 2011, well

15   within a year of that date, it is timely.

16   **III.   LEGAL DISCUSSION**

17   Respondents argue that Grounds One and Two are procedurally defaulted and

18   not subject to habeas review.  Additionally, Respondents contend that the state court

19   did not unreasonably apply clearly established federal law in rejecting the Ground

20   Three.  As discussed below, the Court agrees that a portion of Ground Two was

21   procedurally defaulted, but disagrees with the Respondents and the Arizona Court of

22   Appeals that Engebretson's Ground One claim of ineffective assistance of counsel

1   during pre-trial plea bargaining, and the portion of Ground Two that raises the same

2   claim, is procedurally defaulted.  However, none of the claims merit relief.

3       **A.       Exhaustion and Procedural Default**

4       A state prisoner must exhaust the available state remedies before a federal

5   court may consider the merits of his habeas corpus petition.  *See* 28 U.S.C. §

6   2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999).  "[A] petitioner

7   fairly and fully presents a claim to the state court for purposes of satisfying the

8   exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through

9   the proper vehicle, and (3) by providing the proper factual and legal basis for the

10  claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations

11  omitted).

12      Exhaustion requires that a habeas petitioner present the substance of his

13  claims to the state courts in order to give them a "fair opportunity to act" upon these

14  claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  "To exhaust one's

15  state court remedies in Arizona, a petitioner must first raise the claim in a direct

16  appeal or collaterally attack his conviction in a petition for post-conviction relief

17  pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then

18  present his claims to the Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d

19  1008, 1010 (9th Cir. 1999).

20      Additionally, a state prisoner must not only present the claims to the proper

21  court, but must also present them fairly.  A claim has been "fairly presented" if the

22  petitioner has described the operative facts and federal legal theories on which the

1  claim is based. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44

2  F.3d 1396, 1403 (9th Cir. 1995). "Our rule is that a state prisoner has not 'fairly

3  presented' (and thus exhausted) his federal claims in state court unless he specifically

4  indicated to that court that those claims were based on federal law." *Lyons v.*

5  *Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d

6  904 (9th Cir. 2001). A petitioner must alert the state court to the specific federal

7  constitutional guaranty upon which his claims are based, *Tamalini v. Stewart*, 249

8  F.3d 895, 898 (9th Cir. 2001), however, general appeals in state court to broad

9  constitutional principles, such as due process, equal protection, and the right to a fair

10 trial, are insufficient to establish fair presentation of a federal constitutional claim.

11 *Lyons*, 232 F.3d at 669. Moreover, it is not enough that a petitioner presented to the

12 state court all the facts necessary to support an inadequately identified federal claim

13 or that a "somewhat similar" state law claim was raised. *Baldwin v. Reese*, 541 U.S.

14 27, 28 (2004); *Shumway v. Payne*, 223 F.3d 982, 988 (9th Cir. 2000) (mere similarity

15 between a claim of state and federal error insufficient to establish exhaustion).

16 "Exhaustion demands more than drive-by citation, detached from any articulation of

17 an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th

18 Cir. 2005).

19        Claims may be procedurally defaulted and barred from federal habeas review

20 in a variety of circumstances. If a state court expressly applied an adequate and

21 independent state procedural bar when the petitioner attempted to raise the claim in

22 state court review of the merits of the claim by a federal habeas court is barred. *See*

*Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). Arizona courts have been consistent in the application of the state's procedural default rules. *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Ariz.R.Cirm.P. 32.2(a) is an adequate and independent procedural bar). In Arizona, claims not previously presented to the state courts on either direct appeal or collateral review are generally barred from federal review because any attempt to return to state court to present them would be futile unless the claims fit into a narrow range of exceptions. *See Ariz.R.Crim.P.* 32.1(d)-(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Because these rules have been found to be consistently and regularly followed, and because they are independent of federal law, either their specific application to a claim by an Arizona court, or their operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of such a claim by a federal habeas court. *Stewart*, 536 U.S. at 860; *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (Rule 32, Ariz.R.Crim.P. is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in postconviction proceedings).

A federal court may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate cause for his noncompliance and actual prejudice, or establish that a miscarriage of justice would result from the lack of review. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). To establish cause, a petitioner must point to some objective factor external to the defense impeded his

9

1   efforts to comply with the state's procedural rules.  *Dretke v. Haley*, 541 U.S. 386,

2   393-94 (2004).  "[C]ause is an external impediment such as government interference

3   or reasonable unavailability of a claims factual basis."  *Robinson v. Ignacio*, 360 F.3d

4   1044, 1052 (9th Cir. 2004) (citations omitted).  Ignorance of the state's procedural

5   rules or lack of legal training do not constitute legally cognizable "cause" for a

6   petitioner's failure to fairly present a claim.  *Hughes v. Idaho State Board of*

7   *Corrections*, 800 F.2d 905, 908-10 (9th Cir. 1986); *Schneider v. McDaniel*, 674 F.3d

8   1144, 1153 (9th Cir. 2012).   "Prejudice" is actual harm resulting from the

9   constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir.

10  1984); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996).

11          Alternatively, a federal court may review the merits of a procedurally

12  defaulted claim where a petitioner can establish that a "fundamental miscarriage of

13  justice" would otherwise result.  *Schlup v. Delo*, 513 U.S. at 327.  A fundamental

14  miscarriage of justice exists when a constitutional violation resulted in the conviction

15  of one who is actually innocent.  *Id*.

16                    **1.      Ground One**

17          In Ground One, Engebretson claims that his trial counsel was ineffective

18  because he did not adequately explain the plea agreement offered by the State.

19  Addressing the claim on appeal from the trial court's denial of his PCR petition, the

20  Arizona Court of Appeals stated that:

21          Although the [trial] court acknowledged that Engebretson had raised
            this claim, his petition apparently referred to counsel's performance in
22          connection with the plea only in the statement of facts, not in the

                                    10

1

2

portion of the petition in which he identified and argued the claim he was actually raising.  He did raise and develop this claim in his reply [filed in the trial court], but an issue raised for the first time in a Rule 32 reply is not properly raised.

3

4

Ex. J, p. 3.  This is the last reasoned decision on the claim, and the procedural bar

5

cited by the Arizona Court of Appeals has been determined to be adequate,

6

independent and consistently applied.  *Stewart*, 536 U.S. at 860.  Despite the fact that

7

the claim the Court of Appeals proceeded to address the claim on the merits, it is

8

nevertheless procedurally defaulted.

9

Despite his failure to comply with the procedural requirements of Rule 32

10

Engebretson can overcome the procedural default and the claim will be addressed if

11

he can demonstrate both cause for his procedural default and  the resulting prejudice.

12

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Cook v. Schriro*, 538 F.3d 1000,

13

1025 (9th Cir. 2008).  Addressing cause, Engebretson contends it is established "by

14

demonstrating counsel for the defense had a plea agreement, which he never was

15

presented with, never read, or had the terms read to him . . . ."  *Reply*, pp. 4-5.  This

16

reiteration of the claim is not the sort of external impediment sufficient to support a

17

finding of cause for his failure to properly raise this claim in State court.  *See Murray*

18

*v. Carrier*, 477 U.S. 478, 488 (1986) (requiring "some objective factor external to the

19

defense" to support a finding of cause).

20

Although it makes no difference that the Court of Appeals proceeded to

21

address the claim on the merits, *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989), even

22

11

1    assuming that this claim was not procedurally defaulted, federal habeas relief would

2    not be warranted because, as discussed below, the claim fails on the merits.

3                        **2.    Ground Two**

4        Although Engebretson struggles mightily to distinguish Ground Two from

5    Ground One, noting that Ground Two alleges that his counsel was ineffective for

6    failing to "properly advise him about state law during plea negotiations," *Reply*, p. 9,

7    much of Ground Two clearly overlaps with Ground One.  To the extent that Ground

8    Two raises additional allegations supporting Engebretson's claim that his counsel

9    was ineffective in assisting him to accept or reject the State's plea offer, Ground Two

10   is procedurally defaulted for the same reasons as Ground One.  Nevertheless, the

11   allegations of ineffectiveness during plea negotiations in Ground Two will be

12   considered along with claims of ineffectiveness during plea negotiations Engebretson

13   alleged in Ground One.  That claim is addressed on the merits below.

14       However, Respondents contend that the remaining allegations of ineffective

15   assistance alleged in Ground Two were not even arguably exhausted in the State

16   courts.  Those remaining allegations do not necessarily relate to Engebretson's claim

17   that his counsel was ineffective at the plea stage, and are comprised of allegations

18   that his counsel failed to provide an office address, failed to investigate and file

19   pretrial motions, chose to allow Engebretson to be tried *in absentia*, and refused to

20   withdraw as counsel.

21       Respondents are clearly correct as to Engebretson's claims that his counsel

22   failed to provide an office address, improperly allowed him to be tried *in absentia*,

1   and refused to withdraw as counsel.   None of these claims were identified in

2   Engebretson's list of arguments presented in his petition for review of the trial

3   court's denial of his PCR petition.  *See* Ex. I, pp. IV-V.  However, Engebretson did

4   raise a claim that his counsel failed to investigate and pursue pretrial motions

5   alleging his misidentification.  Ex. I, p. V.  However, that is different from the claim

6   he raises here.  In the instant petition, Engebretson claims that "it was unreasonable

7   [of counsel] to fail to investigate or file any pretrial motions or to assume client had

8   absconded . . . ."  *Petition*, p. 7A.  Because the claim presented in the instant petition

9   does not allege the same deficiencies as the claim alleged in the PCR petition

10  submitted to the Arizona Court of Appeals, it is unexhausted.  *See Hemmerle v.*

11  *Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007) (claims of ineffective assistance of

12  counsel are highly fact-specific).

13      Respondents contend that Engebretson is procedurally barred from now

14  raising the latter portion of Ground Two in State court.   *See* Ariz.R.Crim.P.

15  32.2(a)(3) ("A defendant shall be precluded from relief under [Rule 32] based upon

16  any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral

17  proceeding."); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  As such, the

18  merits of the claim need not be addressed unless Engebretson establishes cause and

19  prejudice or that a fundamental miscarriage of justice has occurred.

20      Engebretson attempts to avoid the preclusive effect of Rule 32 by citing

21  *Stewart v. Smith*, 241 F.3d 1191 (9th Cir. 2001), for the proposition that his State

22  procedural default was not independent of federal law and therefore it is not

13

1    preclusive.  There are at least two problems with Engebretson's argument.  The first

2    is that, unlike the case in *Stewart*, the State court did not make a procedural default

3    ruling on these ineffective assistance claims because they were never raised in the

4    Court of Appeals.  More important, however, is that the Ninth Circuit's decision in

5    *Stewart* was subsequently reversed by Supreme Court in *Stewart v. Smith*, 536 U.S.

6    856 (2002).  In reversing, the Supreme Court found that Rule 32.2(a)(3), so long as

7    its preclusive effect did not rest on a ruling on the merits, constituted a procedural bar

8    independent of federal law.  *Id.* at 860.  Thus, Engebretson's argument to the contrary

9    does not support a finding of cause for his default of this portion of Ground Two.

10   **B.    Merits**

11         Under the AEDPA, a federal court "shall not" grant habeas relief with respect

12   to "any claim that was adjudicated on the merits in State court proceedings" unless

13   the state decision was (1) contrary to, or an unreasonable application of, clearly

14   established federal law as determined by the United States Supreme Court; or (2)

15   based on an unreasonable determination of the facts in light of the evidence presented

16   in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120

17   S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1)

18   if it fails to apply the correct controlling authority, or (2) if it applies the controlling

19   authority to a case involving facts "materially indistinguishable" from those in a

20   controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212

21   F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state court decision is

22   contrary to federal law, the court must examine the last reasoned decision of a state

14

1  court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101

2  (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal

3  law either (1) if it correctly identifies the governing legal principle but applies it to a

4  new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails

5  to extend a clearly established legal principle to a new context in a way that is

6  objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

7  **1.      Grounds One and Two**

8          Ground One, and the portion of Ground Two that overlaps it, is based on

9  allegations of ineffective assistance of counsel during the plea stage of Engebretson's

10  State proceedings.  Criminal defendants have a Sixth Amendment right to counsel

11  that extends to the plea-bargaining process.  *Lafler v. Cooper*, 132 S.Ct. 1376 (2012)

12  (citations omitted).  "During plea negotiations defendants are entitled to the effective

13  assistance of competent counsel."  *Id.* (citation and internal quotation marks omitted).

14  The familiar *Strickland* test applies to challenges to guilty pleas based on ineffective

15  assistance of counsel.  *Hill v. Lockhar*t, 474 U.S. 52, 58 (1985) (citing *Strickland v.*

16  *Washington*, 466 U.S. 668 (1984)).  Under *Strickland*, Engebretson must show both

17  deficient performance and prejudice in order to establish that counsel's representation

18  was ineffective.  *Strickland*, 466 U.S. at 687.  Deficient performance is established by

19  a petitioner's showing that counsel's performance fell below an objective standard of

20  reasonableness.  *Hill*, 474 U.S. at 57 (citing *Strickland*, 466 U.S. at 688).  In the

21  context of rejecting a plea offer, the question is "not whether 'counsel's advice [was]

22  right or wrong, but . . . whether that advice was within the range of competence

15

1   demanded of attorneys in criminal cases.'" *Turner v. Calderon*, 281 F.3d 851, 880

2   (9th Cir. 2002) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

3   "Counsel cannot be required to accurately predict what the jury or court might find,

4   but he can be required to give the defendant the tools he needs to make an intelligent

5   decision." *Id*. at 881.

6       To establish prejudice, the petitioner must show that there is a reasonable

7   probability that, but for counsel's unprofessional errors, the result of the proceeding

8   would have been different. *Cooper*, 132 S.Ct. at 1384 (citing *Strickland*, 466 U.S. at

9   694). "In the context of pleas, a defendant must show the outcome of the plea

10  process would have been different with competent advice." *Id*. When applying these

11  standards to a claim that ineffective assistance led to the improvident rejection of a

12  guilty plea, the petitioner must show "that but for the ineffective advice of counsel

13  there is a reasonable probability that the plea offer would have been presented to the

14  court (i.e., that the defendant would have accepted the plea and the prosecution

15  would not have withdrawn it in light of intervening circumstances), that the court

16  would have accepted its terms, and that the conviction or sentence, or both, under the

17  offer's terms would have been less severe than under the judgment and sentence that

18  in fact were imposed." *Cooper*, 132 S.Ct. at 1386.

19      Federal habeas rules also instruct that, if the state court has already rejected a

20  claim of ineffective assistance of counsel, a federal habeas court may grant relief

21  only if it finds the state court's decision was contrary to, or an unreasonable

22  application of the *Strickland* standards. *See Yarborough v. Gentry*, 540 U.S. 1, 5

1   (2003).  The review of counsel's performance must be "highly deferential" and must

2   adopt counsel's perspective at the time of the challenged decision or conduct, in

3   order to avoid the distorting effects of hindsight.  *Strickland*, 466 U.S. at 689.  There

4   is a strong presumption that counsel's conduct falls within the wide range of

5   reasonable assistance, *id.,* and the Supreme Court had described federal review of a

6   state court's decision on a claim of ineffective assistance of counsel as "doubly

7   deferential."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v.*

8   *Mirzayance*, 556 U.S. 111, 112-113 (2009)).

9           In his plea agreement related ineffective assistance claims, Engebretson

10  alleges that his lawyer prevented him from making a reasonably informed decision to

11  accept or reject the plea by failing to fully explain the plea to Engebretson, failing to

12  advise him properly, failing to provide him a copy of the agreement, and by failing to

13  inform him that the Arizona drug statutes did not apply to police officers acting in the

14  line of duty.

15          Addressing this claim in Engebretson's Rule 32 proceedings, the trial court

16  rejected the claim, stating that "[t]he court finds from the record at the pre-trial

17  conference of February 20, 2007, that the defendant was aware of the State's plea

18  offer and knowingly rejected it."  Ex. H.  In turn, the Minute Entry cited by the trial

19  court, in pertinent part, reflects that:

20                  [Engebretson's counsel] advises the court that the defendant is
            rejecting the plea offer.

21

22

17

1
2

     The Court questions the defendant regarding her understanding of the terms and conditions of the offer and the possible consequences should the defendant be convicted on all charges.

3
4

     THE COURT FINDS that the defendant has been adequately advised of the plea offer and knowingly, intelligently and voluntarily rejects the plea offer.

5    Ex. F, Attach. B.

6       Finally, after finding the claim procedurally defaulted, the Court of Appeals

7    nevertheless addressed the merits of the claim.  The court reviewed the trial court's

8    decision and quoted the findings contained in the February 20, 2007, Minute Entry.

9    Based on the content of the Minute Entry, the Court of Appeals stated that,

10   "Engebretson has not persuaded us he raised a colorable claim for relief on this

11   ground," and concluded that the trial court had not abused its discretion in rejecting

12   the claim. Ex. J, p. 3.

13      The state courts' rejection of this claim was not contrary to, or constitutes an

14   unreasonable application of, the *Strickland* standards.  Based on the Minute Order, it

15   was not unreasonable for the Court of Appeals to conclude that counsel explained the

16   plea offer to Engebretson, that the trial court questioned Engebretson and believed

17   that he understood the agreement, and that Engebretson's rejection of the agreement

18   was knowing, intelligent and voluntary.  This conclusion is further supported by

19   statements in Engebretson's previous pleadings.  In his PCR petition, Engebretson

20   acknowledges that his trial counsel told him that the offer was "for a reduction to a

21   Class Three felony alleging one prior conviction with a presumptive term of 6.5

22   years." Ex. E, p. 3.  That statement belies Engebretson's claim that he was unaware

1   of the plea and its terms.  In fact, other than Engebretson's present contentions to the

2   contrary, there is nothing in the record that evidences a failure on his counsel's part

3   to inform him of the existence and nature of the plea agreement.  On this record, the

4   trial court's denial of this claim was not an unreasonable application of *Strickland*.

5         **2.**      **Ground Three**

6          Engebretson's final claim is that his counsel was ineffective by failing to

7   object to methamphetamine evidence offered at trial.  Engebretson first raised the

8   circumstances associated with this claim on direct appeal.  There, he alleged that the

9   methamphetamine evidence used against him showed signs of tampering.  He then

10   raised the claim in his PCR proceedings and, after it was found to be barred by the

11   trial court, it was resurrected by the Court of Appeals.  The Court of Appeals

12   determined that the trial court erred in finding that because the claim had previously

13   been addressed on direct appeal it was precluded from PCR review.  The Court of

14   Appeals explained that "a claim of ineffective assistance of counsel is independent

15   from the claim upon which it is based." Ex. J, p. 4.  However, the Court of Appeals

16   proceeded to conclude that even if Engebretson could establish his trial counsel's

17   performance was deficient, he could not show prejudice because "as we found on

18   appeal, these issues were without merit; therefore, the related claims of ineffective

19   assistance of counsel necessarily fail." *Id*.

20         In rejecting the claim on direct appeal, the Court of Appeals explained:

21         We also reject Engebretson's contention that the
          methamphetamine he sold to the undercover officer was erroneously

22         admitted into evidence because it had been tampered with before it was

1
2
3
4
5

tested and may have been contaminated or exchanged while it was held in evidence.  When the drugs were admitted into evidence as exhibit four, defense counsel stated he had no objection.  And Engebretson has not established any error occurred as a result of the admission on the drugs, much less error that can be characterized as fundamental.  *See* [*State v.*] *Henderson*, 210 Ariz. [561], ¶ 19, 115 P.3d [601] at 607[(2005)].   The officer identified the methamphetamine as the substance she had obtained on the date of the drug transaction, establishing a sufficient chain of custody to warrant its admission.

6  Ex. A, p. 5.  As the Court of Appeals concluded, the undercover officer identified the

7  methamphetamine at trial.  However, as Engebretson emphasizes, she testified that it

8  was in a different bag.  Ex. M, p. 94.  But any concern about the discrepancy was

9  resolved by the officer's testimony that the original bag in which she had placed the

10  methamphetamine was also in the envelope.  *Id.*  The officer then explained that the

11  new bag "was probably from the Tucson Police Department Crime Laboratory when

12  they probably tested it the put it into another bag and they put the actual baggie in a

13  separate a [sic] bag."  *Id.*

14      Contrary to the Respondents' contentions, *see Answer*, p. 17, n. 2,   the

15  officer's speculation about the addition of the new bag was not exactly confirmed by

16  the testimony of the criminalist from the TPD Crime Laboratory, Pat Lippiello.

17  Lippiello testified that when he received the evidence for testing, it did not appear to

18  have been tampered with.  Ex. M, p. 117.  He then removed the sample from the

19  packaging and tested it, confirming it was in fact 13.4 grams of methamphetamine.

20  *Id.*, pp. 117-119.   However, when asked what he did with the sample after he

21  completed testing it, Lippiello said that he "repackaged it in the packaging, and then I

22

1    returned it back to the evidence department . . . ." *Id.*, p. 120.  Thus, the criminalist

2    made no mention of placing the evidence into a separate bag.

3          The question then, is whether it was reasonable for the Arizona Court of

4    Appeals to conclude on direct appeal that the evidence was properly admitted and in

5    the PCR decision that Engebretson's counsel was not ineffective for failing to object

6    to its admission.   Given the deferential standards of AEDPA and the "doubly

7    deferential" standards for evaluating claims under *Strickland*, this Court finds that the

8    State court's decisions were not unreasonable.  As the record reflects, and as the

9    Court of Appeals noted, the investigating officer identified the methamphetamine as

10   the evidence she had placed into evidence.  Ex. M, p. 93.  The record also reflects

11   that she additionally identified the baggie in which the evidence was originally

12   submitted.  *Id.*, p. 94.  The criminalist testified that when he retrieved the evidence

13   for testing, there was no evidence of tampering.  *Id.*, p. 117.  Additionally, the sample

14   was weighed 13.4 grams, just what would be expected based on the investigating

15   officer's testimony that she purchased one-half and ounce and gave a "useable pinch"

16   to James Moore.  *Id.*, pp. 83-84.

17         To establish prejudice, Engebretson must show that his counsel's deficient

18   performance resulted in a "reasonable probability that, but for counsel's

19   unprofessional errors, the result of the proceeding would have been different."

20   *Strickland*, 466 U.S. at 694.  While there was certainly room for further exploration

21   of the chain of custody of the methamphetamine, the evidence contained in the trial

22   record supports the Court of Appeals finding that Engebretson was not prejudiced by

1   the lack of further inquiry.   The record strongly supports the conclusion that the

2   methamphetamine   admitted   against   Engebretson   at   trial   was   in   fact   the

3   methamphetamine he sold to the undercover officer.   Other than the fact that the

4   evidence was removed from its original bag for testing, Engebretson points to no

5   evidence that would undermine the conclusion that the evidence had not been

6   subjected to tampering.   As such, the Court of Appeals' rejection of this claim was

7   not unreasonable.

8   **IV.   <u>RECOMMENDATION</u>**

9   Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

10  District Court, after its independent review, **deny** Engebretson's Petition for Writ of

11  Habeas Corpus (Doc. 1).

12  This Recommendation is not an order that is immediately appealable to the

13  Ninth Circuit Court of Appeals.   Any notice of appeal pursuant to Rule 4(a)(1),

14  Federal Rules of Appellate Procedure, should not be filed until entry of the District

15  Court's judgment.

16  However, the parties shall have fourteen (14) days from the date of service of

17  a copy of this recommendation within which to file specific written objections with

18  the District Court.   *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the

19  Federal Rules of Civil Procedure.   Thereafter, the parties have fourteen (14) days

20  within which to file a response to the objections.   Replies shall not be filed without

21  first obtaining leave to do so from the District Court.   If any objections are filed, this

22  action should be designated case number: **CV 11-0583-TUC-JGZ**.   Failure to timely

1   file objections to any factual or legal determination of the Magistrate Judge may be

2   considered a waiver of a party's right to *de novo* consideration of the issues. *See*

3   *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

4        Dated this 29th day of August, 2013.

Jacqueline M. Rateau
United States Magistrate Judge